IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-03070-02-CR-S-MDH** |
| **JESSICA NICOLE PICKETT,** | |
| **Defendant.** | |

# PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri ("the Government") and Jessica Nicole Pickett ("the defendant"), represented by Paul Duchscherer. The defendant understands and agrees that this plea agreement is only between the defendant and the Government and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified.

2. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the indictment that charges the defendant with violating 18 U.S.C. § 2251(a) and (e), that is, conspiracy to commit sexual exploitation of children. The defendant agrees to plead guilty to Count 5 of the indictment that charges the defendant with violating 18 U.S.C. § 1470, that is, transfer of obscene material to a minor. By entering into this plea agreement, the defendant admits to committing these offenses and to being guilty of these offenses.

3. **Statutory Penalties.** The defendant understands Count 1 of the indictment carries a mandatory-minimum sentence of 15 years' imprisonment and the following maximum

penalties: not more than 30 years' imprisonment, not less than 5 years', or life, supervised release, a fine of not more than $250,000, and a $100 mandatory special assessment that must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony, and that restitution may be ordered as further described below.

The defendant understands Count 5 of the indictment carries the following maximum penalties: not more than 10 years' imprisonment, not more than 3 years' supervised release, a fine of not more than $250,000, and a $100 mandatory special assessment that must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony, and that restitution may be ordered as further described below.

The defendant understands that the Court may order the sentences imposed on these counts to run consecutively.

4. **Factual Basis for Guilty Plea.** The parties stipulate that the following facts are true and establish both a factual basis for the defendant's guilty plea and the defendant's guilt beyond a reasonable doubt:

On May 22, 2024, the Missouri Division of Social Services - Children's Division ("CD") received an emergency hotline report regarding the Bunch family who resided in Strafford, Webster County, Western District of Missouri. The allegations involved the mother, Mallory Bunch, the father, Thomas Bunch, and Mallory and Thomas's live-in girlfriend, Jessica Pickett, sexually exploiting the children who were also living in the residence. On May 23, 2024, a detective with the Webster County, Missouri, Sheriff's Office ("WCSO") received an audio recording from a source, later identified as J.B., an unrelated male who lived on the property with Mallory Bunch and Thomas Bunch. The audio recording was two minutes long, and was a recording of a conversation that occurred between a male and a female. The female heard in the recording was later identified as Mallory. The conversation discussed an individual named "Nikki," who was later determined to be PICKETT. The following conversation was contained in the audio recording:

| | |
|---|---|
| Male | "You know we are talking about a 14-year-old boy." |
| Female | "You know we are talking about a 14-year-old boy that is Tom's blood, and that shit runs through his blood. Tom senior did it to Tom." |
| Male | "You have had sex with [MV1] four or five times. After the first time was it Tom wanting you to do it, or was it [MV1] asking you to do it? |
| Female | "It was Tom still wanting to do it." |

| | |
|---|---|
| Male | "I thought you told me [MV1] came and ask to do it?" |
| Female | "[MV1] came and ask me a few times because when Tom would want me to do it, I was like no. Then [MV1] would come to me and be like can we? I was like No, I don't. No. I was like fine. There is me again giving everybody what they want. Fucking how giving a shit, how it is fucking me up." |
| Male | "So your 14 year old kid come to Mom, can I have some pussy and you finally give in?" |
| Female | "He ask me can we not film it. No, you know that I can not, not film it. Because if he finds out that we did it and it wasn't filmed. He is going to get pissed, and I don't know what he is going to do when he gets pissed. So no." |
| Male | "So you actually did do it without Tom telling you to?" |
| Female | "No because Tom would harass me about it. Are you going to do it? Are you going to do it with [MV1]? When are you going to send me more videos?" |
| Male | "And you know he is going to be showing those videos to Nikki." |
| Female | "I said how do you know Nikki doesn't see them, because Nikki has your phone all the fucking time. He said because they are hidden really well. I was like how do you have them hidden?" |

During the recording, Mallory stated that she told Thomas she was going to leave and if Thomas told her law enforcement was looking for her, she would not return to the residence. Mallory stated she began having sex acts with MV1 in December, when he was 14 years old and the last time it occurred was in April 2024. Mallory stated she had deleted the videos of her involved in sex acts with MV1 from her cell phone and she did not think her cell phone would contain any of the evidence.

On May 23, 2024, WCSO obtained and executed a state search warrant on Bunch/PICKETT residence. Mallory was located and detained in Springfield, Missouri, and Thomas was located and detained at the residence along with PICKETT.

When MV1 was contacted at the residence, it was determined that MV1 had hidden some of the family's cellular phones somewhere in the yard. MV1 informed CD investigators of the location of the hidden cell phones. Those cell phones, determined to belong to MV1 and Thomas, were recovered by WCSO. WCSO also seized multiple electronic devices including cell phones, a tablet, and an Apple MacBook computer.

Also, on May 23, 2024, a WCSO detective interviewed Thomas, after advising Thomas of his *Miranda* rights. Thomas said he resided with PICKETT, 15-year-old MV1, and two other minor children. Thomas said MALLORY lived in the residence until the beginning of May 2024, then she moved into a "cabin" on the property. Thomas said he and MALLORY were getting divorced. Thomas, Mallory, and PICKETT had been in a polyamorous sexual relationship for almost ten years and used to sleep in the same bedroom until Mallory moved into a separate bedroom approximately one year prior.

Thomas was asked about a text message conversation he had with PICKETT involving MV1 wanting to have sex with PICKETT. Thomas said, "What do you mean?" The detective responded that Thomas had sent a text message to PICKETT regarding this the previous day. Thomas said, "I text Nikki, yeah because [MV1] had come up to me and asked me about something that his mom told him, he said, mom told me that you're wanting me to have se-, uh

do, sorry he didn't say that he said mom said that you want me to do Nikki is that correct and I said hell no it's not, so then I told Nikki about it and then it was funny that you guys showed up just a little bit later." Thomas said he didn't know when MV1 had the conversation with Mallory. Thomas said MV1 had just asked him about what MALLORY told him when Thomas was getting ready to take a shower. Thomas said he asked MV1 why he would do something like that. Thomas said MV1 told him he didn't know and walked off. Thomas said he then text messaged PICKETT.

On May 29, 2024, MV1 (DOB 1-28-2009) was seen for a forensic interview at the Child Advocacy Center in Springfield, Missouri. MV1 said he was 15 years old, and he lived with his two minor brothers. Until approximately a week prior, he lived with Mallory, Thomas, and PICKETT. MV1 said he came to the Child Advocacy Center to talk about what was going on between him and Mallory. MV1 said "very inappropriate and very wrong things" were happening between him and Mallory. MV1 said this included sexual intercourse, oral sex, and hand to penis contact.

MV1 said the first time something happened between him and MALLORY, MALLORY came into his bedroom and talked with him about it. MV1 said MALLORY told him what "jacking off" and "head" were. MV1 said MALLORY told him about semen coming out of a penis. MV1 said MALLORY then began rubbing his penis with her hand. MALLORY then placed his penis inside of her mouth. MV1 said afterward, MALLORY told him that no one could know about what had just happened and then MALLORY left his bedroom. MV1 said he was 14 years old when this occurred.

MV1 learned that Thomas had told Mallory to come into MV1's bedroom to perform the sexual acts on MV1. Thomas had instructed Mallory to do sexual things with MV1. Mallory did not tell him why Thomas had instructed her to engage in sexual acts with MV1.

MV1 said occasionally there would be videos made of the sexual acts occurring between Mallory and MV1. MV1 said, "I know of like a video here or there, I don't remember that much though." The videos would be taken with MALLORY's Apple iPhone, which he described as having a pink case with bees and sunflowers on it. On one occasion, MALLORY told him that Thomas wanted a video of the sexual acts occurring between Mallory and MV1, so Mallory told MV1 they were going to take a video on that occasion. MV1 said he did not like the fact that the sexual acts with Mallory were being video recorded.

Between May 24, 2024, and May 26, 2024, a 20-year-old adult male, ("hereinafter" Victim 2 ("V2")) reached out to WCSO and disclosed that, when he lived at home with Thomas and Mallory at the residence in Strafford, Webster County, Western District of Missouri, he was physically abused by Thomas. V2 said he had not lived at that residence for approximately four years. He also disclosed that, when he was 14 years old, PICKETT began having sexual intercourse with him. V2 said PICKETT was between 29 and 31 years old at time. V2 said he was sexually assaulted by PICKETT between 20 and 30 times.

While conducting a forensic examination of MV1's cell phone, WCSO detectives determined that an Apple iCloud account had been shared with MV1 by PICKETT. WCSO detectives

observed sexually explicit images of Mallory and PICKETT within the iCloud account that had been shared to MV1's cell phone. Specifically, within MV1's "Camera Roll," there was an icon that read "For You." Within the "For You" section of the "Camera Roll," it showed an iCloud link that had been shared with MV1, which was labeled "Shared by Jessica Pickett." The iCloud link contained 376 images and 2 videos, which showed nude images of PICKETT, Mallory, and a male believed to be Thomas. The folder showed that the images were taken between November 12, 2017, and May 11, 2024, and showed that the images/videos would be available for MV1 until June 20, 2024. A number of the images and videos showed sexual acts occurring including the use of sexual devices being inserted into a vagina, a female masturbating, and a male touching his exposed penis.

On June 10, 2024, PICKETT was interviewed by investigators after being advised of her *Miranda* rights. PICKETT stated that she, Mallory, and Thomas were a "throuple," which meant that they were in a polyamorous relationship with each other. She stated she had been in a relationship with Mallory and Thomas for approximately nine to ten years, and she considered all of the children in the home, including MV1, to be her children. She further acknowledged that MV1 was 15 years old. PICKETT was asked about the iCloud link that had been shared to MV1's cell phone. PICKETT said the images and videos that had been shared were from a hidden folder on her cell phone. PICKETT admitted most of the images and videos contained within the hidden folder were images/videos of her. PICKETT claimed she was unsure how the iCloud link was shared from her hidden folder to MV1 but admitted that she set up MV1's cell phone when he first got the cell phone.

PICKETT was asked about the allegations involving V2. PICKETT eventually stated that, on one occasion when V2 was a minor living in the residence, he "groped" her by touching her breasts. PICKETT said she could not remember having sexual intercourse with V2.

PICKETT signed a consent to search form for the two cell phones that she had with her when she was contacted by law enforcement on June 10, 2024. Located in a hidden folder within the "Camera Roll" section of PICKETT's cell phone were the same images/videos that had been shared through the iCloud link with MV1. Within the family sharing section of PICKETT'S cell phone, it showed PICKETT had MALLORY, Thomas, MV1, and two other minor children added as family members. PICKETT showed to be the "Organizer" within the family sharing section.

Also located was a text message conversation that occurred between PICKETT and Thomas on May 22, 2024, at 16:45 hours. This conversation was as follows:

| | |
|---|---|
| Thomas: | "So MALLORY told [MV1] I wanted him to do you." |
| PICKETT: | "Why does she like to stir drama" |
| Thomas: | "Not sure. He asked me about it." |
| Thomas: | "Sorry." |

On June 14, 2024, V2 spoke to investigators. He indicated he was willing to make a statement for the safety of his younger brothers who were still in the residence. He learned that MV1 had been sexually abused and felt that he had failed to protect his younger brothers by failing to

report what happened to him.

V2 indicated that he had lived at the Bunch residence at in Webster County, Missouri until he was 16 years old, and then he moved in with his grandparents. All of the abuse occurred at that residence.

According to V2, he was sexually abused by PICKETT, starting when he was 13 years old. It began with PICKETT having V2 fondle her breasts and put his mouth on her breasts. It eventually increased in severity until PICKETT was having sexual intercourse with V2. Thomas was present every time PICKETT sexually abused V2. When Thomas was at work, PICKETT would take pictures of the sexual abuse with her cell phone and send them to Thomas. Thomas directed PICKETT to engage in vaginal sex, anal sex, and oral sex with V2. When V2 was done and left the room, Thomas and PICKETT would have sex. PICKETT took images of herself holding V2's penis, of V2's penis in her mouth, and of V2 holding PICKETT's breasts. He would see PICKETT send those images to Thomas and delete them from the message thread.

V2 also disclosed that he had been sexually abused by Mallory, beginning when he was in tenth grade. V2 believed that Thomas had instructed Mallory to engage in sexual activity with V2, but there were no images taken of the abuse. Thomas was present when Mallory abused V2.

Thomas was present during much of the sexual abuse committed by PICKETT and Mallory and often directed the abuse and gave instructions on what V2 was supposed to do. Thomas told V2 that he was teaching V2. When V2 refused to engage in sexual activity with Mallory or PICKETT, Thomas would threaten him.

On Thomas's cellular phone, investigators located text messages between Thomas and PICKETT for the time period between September 8, 2020, and May 23, 2024. Those messages included the following exchanges:

| October 26, 2020 | |
|---|---|
| Thomas: | "I love seeing you in your shorts last night with no panties give me lots of dirty thoughts." |
| PICKETT: | "Oh yeah?" |
| Thomas: | "Oh well way too bad for you" |
| PICKETT: | "I know" |
| Thomas: | "Yeah I'd like you have [MV1] put lotion your legs like that" |
| PICKETT: | "Ohhh" |

| November 2, 2020 | |
|---|---|
| Thomas: | "So my way or not?" |
| PICKETT: | "Yes" |
| Thomas: | "What?" |
| PICKETT: | "Your way" |
| Thomas: | "Prove it to me." |
| PICKETT: | "How" |
| Thomas: | "First what happened to my clip" |
| PICKETT: | "Idk. I didn't delete it." |
| Thomas: | "You'll replace it." |

| | |
|---|---|
| PICKETT: | "Alright" |
| Thomas: | "Ask [MV1] about the pups and then send me a picture on accident to his phone" |
| PICKETT: | "I don't wanna do that." |
| PICKETT: | "I'm not comfortable with that." |
| Thomas: | "I didn't ask my way or not don't have to be nasty and who knows I might have his phone" |
| PICKETT: | "Ok" |
| Thomas: | "Is it my way or not?" |
| PICKETT: | "Yes. I wanna please you but I don't wanna do that." |
| Thomas: | "OK than won't ask you again." |

| June 3, 2021 | |
|---|---|
| Thomas: | "I opened up your text and the first thing went through my mind is you sent a naked pic and [MV1] was behind me" |
| PICKETT: | "Lol" |
| Thomas: | "Yeah" |

| June 23, 2021 | |
|---|---|
| PICKETT: | Unknown image sent |
| Thomas: | "Oh wow" |
| Thomas: | "Hell yes" |
| PICKETT: | "Thought I'd show ya a little something" |
| Thomas: | "Well got any more" |
| PICKETT: | "Not at the moment" |
| Thomas: | "Well dang" |
| PICKETT: | "I went and laid in a tanning bed again today." |
| Thomas: | "Well than I best get pics" |
| PICKETT: | "Yeah? I'll send you some next time I go." |
| Thomas: | "Most definitely" |
| Thomas: | "[MV1] got an eye full I think he looks at my phone so he can see" |
| PICKETT: | "Oh lol" |

| July 28, 2021 | |
|---|---|
| PICKETT: | Unknown image sent |
| Thomas: | Unknown image sent |
| Thomas: | "Oh yeah" |
| PICKETT: | "Hello handsome" |
| PICKETT: | "[MV1] looks unimpressed" |
| Thomas: | "We are spraying the fience line" |
| PICKETT | "Oh lol" |
| Thomas: | "Sun in his eyes" |
| Thomas: | "He should be impressed he saw boobs" |
| PICKETT: | "Lol" |

| August 3, 2021 | |
|---|---|
| Thomas: | "I think [MV1] is missing your pics he keeps asking who's texting and than looks" |
| Thomas: | "Lol" |
| PICKETT: | "He's silly" |
| Thomas: | "He's a perv" |

| | |
|---|---|
| Thomas: | "So no pic. Lol" |
| PICKETT: | "Not right now." |

| October 16, 2021 | |
|---|---|
| Thomas: | "[MV1] want too see boobies. Lol" |
| PICKETT: | "He is a boobie" |
| Thomas: | "Tease" |
| Thomas: | "On our way home" |
| PICKETT: | "Sweet" |
| Thomas: | "Show me" |

| February 20, 2023 | |
|---|---|
| Thomas: | "So I'm going to tell Mallory about the panties and see how long it takes for her to tell you" |
| PICKETT: | "Oh yeah" |
| Thomas: | "Yeah just to see what she says" |
| PICKETT: | "Alright" |
| Thomas: | Sent screenshot of text messages between Thomas and Mallory with Thomas asking if Mallory was missing any panties and Thomas saying, "Well [MV1] has a while stash up in his bed." |
| PICKETT: | "Yeah" |
| Thomas: | "You better be careful. [MV1] might poke you. Lol" |
| PICKETT: | "Lol yeah" |

On June 15, 2024, the Springfield, Missouri, Police Department discovered Thomas's body, and it appeared that he committed suicide.

PICKETT further agrees that she and Mallory Bunch and Thomas Bunch did agree to employe, use and/or induce Minor Victim 1 (MV1) and Minor Victim 2 (V2) to engage in sexually explicit conduct, for the purpose of producing a visual depiction of such conduct using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means including by computer or cellular phone. PICKETT agrees that she voluntarily and intentionally joined in the agreement, knowing the purpose of the agreement, either at the time it was first reached or at some later time while it was still in effect. Finally, PICKETT agrees that the materials containing the child pornography were produced using materials that had been mailed, shipped, and transported in interstate or foreign commerce by any means, including computer or cellular phone. Additionally, PICKETT, as stated above, transferred obscene material to a minor, MV1, who PICKETT knew was less than 16 years old, and PICKETT used any means or facility of interstate commerce to transfer such material.

**5. Use of Factual Admissions and Relevant Conduct.** The defendant understands and agrees that the facts contained in ¶ 4 and other portions of this plea agreement, as well as admissions the defendant makes during the change of plea hearing, will be used to determine the defendant's guilt and the defendant's advisory sentencing range under the United States

Sentencing Guidelines. The defendant likewise understands and agrees that the conduct charged in any dismissed counts of the indictment and all other uncharged related criminal activity may be considered as "relevant conduct" for purposes of calculating the defendant's advisory sentencing range under the Guidelines.

The defendant further understands that Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant during plea discussions or plea proceedings if a guilty plea is later withdrawn. The defendant knowingly and voluntarily waives the rights that arise under those rules and agrees that any such statements, as well as the facts contained in ¶ 4 and other portions of this plea agreement, may be used against the defendant at any time and in any proceeding should the defendant withdraw from this plea agreement.

**6. Sentencing Procedures.** The defendant understands that in determining the appropriate sentence, the Court may impose any sentence authorized by law. While the Court must consider the United States Sentencing Guidelines, the Guidelines are advisory and do not bind the Court. The Court will determine the defendant's advisory sentencing range under the Guidelines at sentencing, but the Court may impose a sentence either above or below that range, so long as that sentence is reasonable.

The defendant further understands that the Court will find facts by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the defendant's advisory sentencing range under the Guidelines. The defendant waives any right to a jury finding beyond a reasonable doubt of all facts used to determine the sentence imposed and waives any right to have those facts alleged in an indictment. The defendant also understands that in finding the facts relevant to the imposition of the defendant's sentence, the Court may

consider any reliable information, including hearsay, and that the Court will not be bound by any recommendation regarding the application of the Guidelines or the sentence to be imposed made by the United States Probation Office or the parties.

The defendant likewise understands that any term of imprisonment the Court may impose will not allow for parole and that in addition to a term of imprisonment the Court may impose a term of supervised release. The defendant further understands that a violation of a condition of supervised release could result in the Court imposing an additional term of imprisonment as well as an additional term of supervised release to follow, both subject to the statutory maximums set forth in 18 U.S.C. § 3583.

**7. Government's Agreements.** Based upon evidence in its possession at this time, the Government agrees not to pursue any additional charges against the defendant for any federal criminal offenses related to conspiracy to commit sexual exploitation of children, sexual exploitation of children, receipt and distribution of child pornography or transfer of obscene material to minors, for which it has venue and that arose out of the defendant's conduct described above in ¶ 4. Additionally, the Government agrees to dismiss Count 4, sexual exploitation of children, at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for murder or attempted murder; physical or sexual violence; aiding and abetting, attempting, soliciting, or conspiracy to commit murder or physical or sexual violence; and any criminal activity currently unknown to the Government.

**8. Preparation of Presentence Report.** The defendant understands and agrees the Government will provide the Court and the United States Probation Office a version of the offense conduct. This may include information concerning the background, character, and

conduct of the defendant, including the entirety of the defendant's criminal activities. The defendant understands these disclosures are not limited to the counts to which the defendant will plead guilty. The Government may respond to comments made or positions taken by the defendant or the defendant's counsel and may correct any misstatements or inaccuracies.

9. **Withdrawal of Plea.** Except for change of plea hearings before a United States Magistrate Judge, either party reserves the right to withdraw from this plea agreement at any time prior to the United States District Judge formally accepting the defendant's pleas of guilty. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible.

If the defendant waives the right to plead guilty before a District Judge and consents to plead guilty before a United States Magistrate Judge, then the parties' rights to withdraw from this plea agreement for any reason terminate upon the Magistrate Judge's completion of the change of plea hearing with a recommendation that the guilty pleas be accepted.

After the District Judge accepts the defendant's guilty pleas, or the Magistrate Judge completes the change of plea hearing, the defendant may withdraw the pleas only if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts the pleas, the defendant may not withdraw the pleas solely because of the nature or length of the sentence imposed, including if the Court imposes a sentence that is outside the defendant's advisory sentencing range under the United States Sentencing Guidelines or a sentence that the defendant does not expect, like, or agree with.

10. **Agreed Guidelines Applications.** With respect to the application of the United States Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a. The applicable Guidelines section for the offense of conviction in Count 1 is U.S.S.G. § 2G2.1, and the applicable Guidelines section for the offense of conviction in Count 5 is U.S.S.G. § 2G3.1.

b. There is no agreement between the parties regarding the applicable enhancements. The parties agree that the Court will determine the defendant's applicable enhancements after receipt of the presentence report prepared by the United States Probation Office. The parties reserve the right to contest that determination.

c. The defendant has admitted guilt and clearly accepted responsibility for the defendant's actions, entitling the defendant to a two-level reduction pursuant to U.S.S.G. § 3E1.1(a). In addition, the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Consequently, if the Court finds the defendant's total offense level to be 16 or higher, the defendant is entitled to an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b). This plea agreement constitutes the Government's written motion with the Court for that reduction. This motion will be withdrawn, and the Government will be free to withdraw its recommendation that the defendant receive any reduction for acceptance if, after entering into this plea agreement, the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and the defendant's pretrial release, (2) attempts to withdraw the defendant's guilty pleas, (3) violates the law, or (4) otherwise engages in conduct inconsistent with the defendant's acceptance of responsibility as described in U.S.S.G. § 3E1.1 and its commentary.

d. The parties have not reached an agreement regarding the defendant's criminal history category. The parties agree that the Court will determine the defendant's applicable criminal history category after receipt of the presentence report prepared by the United States Probation Office. The parties reserve the right to contest that determination.

e. The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable." However, while the United States does not agree that a sentence outside the Guidelines range is appropriate, the defendant may argue for a sentence outside the Guidelines range but agrees not to recommend or request a total sentence less than 240 months (20 years). The agreement by the Government not to seek a sentence outside of the applicable Guideline range is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

f. The parties acknowledge and agree that there are no agreements between the parties with respect to any Guidelines issues other than those specifically listed in this paragraph, including its subparagraphs. As to any other Guidelines issues, the parties are free to advocate their respective positions before the Court.

11. **Financial Disclosures.** The defendant will fully and truthfully disclose all assets and property in which the defendant has any interest or over which the defendant exercises direct or indirect control, including assets and property held by a spouse, nominee, or other third party. These disclosure obligations are ongoing and in force from the execution of this agreement until all financial obligations arising from the defendant's guilty pleas—including any forfeiture judgment, restitution order, fine, or assessment—are satisfied in full. The defendant likewise agrees to assist the Government in identifying, locating, returning, and transferring assets for use in payment of restitution, forfeiture, fines, or assessments ordered by the Court.

Within 10 days of signing this plea agreement, the defendant will execute and provide the Government (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submitted to the United States Probation Office. The defendant likewise authorizes the Government to obtain the defendant's credit report. If requested by the Government, the defendant agrees to submit to one or more sworn interviews or depositions regarding the defendant's assets. The defendant understands that the Government will consider compliance with these disclosure obligations when making a recommendation to the Court regarding the defendant's acceptance of responsibility.

12. **Restitution.** Under 18 U.S.C. § 2259(b), such an award shall not be less than $3,000 per victim of a child pornography trafficking offense. The defendant agrees that these victims include any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal or state

law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing. The defendant understands that the Government may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order or fine the Court imposes.

**13. Government's Reservation of Rights.** The Government reserves the right to comment on the evidence supporting the offense conduct in this case and the right to oppose any position advanced by the defendant at sentencing that might be inconsistent with this plea agreement. The Government also reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The Government further reserves the right to oppose, when consistent with this plea agreement, any arguments the defendant might advance on direct appeal or in post-conviction proceedings. In particular, the Government remains free to defend the legality and propriety of the defendant's sentence on appeal or collateral attack, even if the Court chooses not to follow any recommendation made by the Government.

**14. Waiver of Constitutional Rights.** The defendant understands that a guilty plea is a complete and final admission of guilt, that by pleading guilty the defendant waives certain constitutional rights, and that the Court will adjudge the defendant guilty without a trial. In particular, the defendant acknowledges being advised of, understanding, and knowingly and voluntarily waiving (1) the right to plead not guilty and to persist in a plea of not guilty; (2) the right to be presumed innocent until the defendant's guilt has been established beyond a reasonable doubt at trial; (3) the right to a jury trial; (4) the right to be represented by, and receive the effective assistance of, counsel—and if necessary, have the Court appoint counsel—

at trial and at every stage of the proceeding; (5) the right to confront and cross-examine adverse witnesses at trial; (6) the right to be protected from compelled self-incrimination; and (7) the rights to testify, to present evidence, and to compel or subpoena a witness to appear on the defendant's behalf at trial.

15. **Loss of Rights.** The defendant understands that by pleading guilty to a felony offense the defendant will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury. The defendant further understands that during the change of plea hearing, the Court may ask the defendant questions about the offenses underlying the defendant's guilty pleas, and if the defendant answers those questions under oath and in the presence of counsel, the defendant's answers may later be used against the defendant in a prosecution for perjury or making a false statement.

16. **Waiver of Pre-Trial Motions.** The defendant understands the right to file certain pre-trial motions and knowingly and voluntarily withdraws any pending motions, waives the right to have any pending motions resolved, and waives the right to file any additional pre-trial motions in this case. This waiver includes, but is not limited to, any motions based on the statute of limitations, the Speedy Trial Act, or any grounds enumerated in Federal Rule of Criminal Procedure 12(b)(3).

17. **Waiver of Appellate and Post-Conviction Rights.** The defendant understands and acknowledges the right to directly appeal the conviction or sentence in this case and any right to challenge the conviction or sentence collaterally through post-conviction proceedings, including through proceedings under 28 U.S.C. § 2255, 28 U.S.C. § 2241, and *corum nobis*. In exchange for the concessions made by the Government in this plea agreement, the defendant

knowingly and voluntarily waives all rights to directly appeal or collaterally attack the conviction or sentence on any non-jurisdictional ground except (1) ineffective assistance of counsel, (2) prosecutorial misconduct, or (3) a sentence greater than the statutory maximum. These are the only non-jurisdictional grounds for direct appeal or collateral attack not waived by this plea agreement.

The grounds for direct appeal or collateral attack that are waived include, but are not limited to, the following: sentencing errors such as a misapplication of the United States Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence; any restitution or forfeiture order; any challenge to the constitutionality of the statute or statutes to which the defendant is pleading guilty or under which the defendant is sentenced; any argument that the defendant's admitted conduct does not fall within the scope of the statute or statutes to which the defendant is pleading guilty; any argument that the defendant's plea was not voluntary; and any argument that the defendant's constitutional rights were violated, other than due to ineffective assistance of counsel or prosecutorial misconduct.

If, however, the Government exercises its right to appeal the sentence imposed under 18 U.S.C. § 3742(b), the defendant is released in part from this waiver and may cross-appeal the sentence imposed as allowed under18 U.S.C. § 3742(a) with respect to any issues that have not been agreed upon in this agreement.

The defendant acknowledges discussing this appeal waiver with counsel and understanding its terms. The defendant waives any explanation of the terms of this waiver under Federal Rule of Criminal Procedure 11(b)(1)(N).

**18. Waiver of FOIA Request.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974.

**19. Defendant's Breach of Plea Agreement.** If the Court determines the defendant committed any crime or violated any condition of release between the signing of this agreement and the date of sentencing; failed to appear for sentencing; provided intentionally misleading, incomplete, or untruthful information to the Government, the United States Probation Office or the Court; or otherwise breached any term of this plea agreement, the Government will be released from its obligations under this agreement and will retain the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant, however, will remain bound by the terms of this agreement, and will not be allowed to withdraw the guilty pleas entered pursuant to this agreement. The defendant likewise will waive the right to challenge the initiation of the dismissed or additional charges following a finding of breach, including by asserting a statute of limitations defense.

**20. Defendant's Representations.** The defendant acknowledges entering into this plea agreement freely and voluntarily after receiving the effective assistance, advice, and approval of counsel. The defendant acknowledges being satisfied with the assistance of counsel and that counsel has fully advised the defendant of the rights and obligations arising from this agreement. The defendant further acknowledges that no threats or promises, other than the terms and conditions of this agreement, have been made by the Government, the Court, the defendant's counsel, or any other person to induce the defendant to enter a plea of guilty.

**21. Sex Offender Registration.** The defendant understands and agrees that as a condition of supervised release, the defendant will be required to register as a sex offender upon

release from prison as directed by the United States Probation Office. The defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment. The defendant also understands that, independent of supervised release, the defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout the defendant's life. The defendant shall keep this registration current and shall notify the state sex offender registration agency or agencies of any changes to the defendant's name, place of residence, employment, or student status, or other relevant information, including international travel. The defendant shall comply with requirements to periodically verify in person the defendant's sex offender registration information. The defendant understands that failure to comply with any sex offender registration requirements in whatever state the defendant resides, works, or goes to school following release from prison will subject the defendant to possible federal and state penalties.

**22.** **No Undisclosed Terms.** The parties agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties and that any purported term or condition not expressly set forth in this agreement, or an in camera supplement, is not enforceable.

R. MATTHEW PRICE
United States Attorney

Dated: 1·22·2026

Stephanie L. Wan

STEPHANIE L. WAN
Assistant United States Attorney

*[Signatures continue on the following page.]*

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the United States Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 1/22/26

JESSICA NICOLE PICKETT
Defendant

I am defendant Jessica Nicole Pickett's attorney. I have fully explained to my client his rights with respect to the offenses charged in the indictment. Further, I have reviewed with my client the provisions of the United States Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with my client. To my knowledge, Jessica Nicole Pickett's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 1/22/26

PAUL DUCHSCHERER
Attorney for Defendant